**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

**PETER (PANAGIOTI) TSOLKAS,**

      **Plaintiff,**

**v.**                              **Case No.: 3:23-cv-01428-WWB-PDB**

**DEPUTY DALTON SUMNER,**

      **Defendant.**

_____/

**DEFENDANT'S MOTION FOR FINAL SUMMARY JUDGMENT**
**AND INCORPORATED MEMORANDUM OF LAW**

Defendant DEPUTY DALTON SUMNER ("Deputy Sumner"), through undersigned counsel, and pursuant to Rule 56, Federal Rules of Civil Procedure, moves this Honorable Court for final summary judgment in his favor.

This case stems from Plaintiff's arrest during a protest at the Florida State Prison in Raiford, Florida on December 6, 2020. Deputy Sumner – then a Deputy with the Bradford County Sheriff's Office – arrested Plaintiff after he refused to comply with orders to disperse. As Deputy Sumner escorted Plaintiff to his patrol vehicle, Plaintiff decided to stop supporting his body weight with his legs in an act he describes as "passive resistance." Plaintiff fell to the ground, and Deputy Sumner fell on top of him. Plaintiff injured his left shoulder as a result of the fall. The event was captured on Deputy Sumner's body-worn camera and on the cell phone of another protestor.

Plaintiff's Complaint [ECF No. 1] brings the following claims:

COUNT I – Excessive Force (section 1983)

COUNT II – First Amendment Retaliation (section 1983)

COUNT III – Assault and Battery (state law)

As detailed below, based on the undisputed facts in this case, Plaintiff's claims fail as a matter of law. Moreover, Deputy Sumner enjoys qualified immunity from Plaintiff's federal claims, and statutory immunity from Plaintiff's state law claims. For these reasons, Deputy Sumner is entitled to summary final judgment in his favor.

## STATEMENT OF UNDISPUTED FACTS

On December 6, 2020, Plaintiff participated in a protest outside the entrance to Florida State Prison in Raiford, Florida. ECF No. 1, ¶ 10. There were approximately 40 protesters on site. FIBRS Incident Report Number BCSO20OFF002510, ECF No. 22-1, p. 3.

Several deputies with the Bradford County Sheriff's Office – including Deputy Sumner – responded to a call requesting law enforcement assistance. Deposition of Deputy Sumner, ECF No. 22-2, 20:16-21, 21:18-22:13, 22:14-20; Call History Record, ECF No. 22-3, p. 5. Dispatch informed the deputies that 20 cars were on the property and blocking both entrances to the Prison. Id. Dispatch contacted Florida Highway Patrol to request "as many units as they ha[d] available" due to reports of fireworks, fires, and one or more protester climbing on the archway over the entrance to the Prison. Id.

By the time Deputy Sumner arrived on scene, the protestors had parked their cars and moved to a field in front of the prison and near the entry archway.



Deputy Sumner's Body-worn Camera Footage, ECF No. 22-4, 00:31.

Upon arrival, Deputy Sumner was able to observe an anarchy symbol painted on the entry archway, red paint on the road, and a banner reading "NEXT STEP, WE BURN IT DOWN." ECF No. 22-4, 00:31; Deposition of Peter (Panagioti) Tsolkas, ECF No. 22-5, 21:1-18.

After discussion with another deputy, Deputy Sumner made the following announcement over his patrol vehicle's public address system:

> This is the Bradford County Sheriff's Office. You have 30 seconds to leave. You are trespassing. If you do not leave, you will be arrested, and your cars will be towed. This is your one and only warning.

ECF No. 22-4, 1:22-1:43.

Plaintiff heard Deputy Sumner's order to disperse. ECF No. 22-5, 25:21-26:14. Still, neither Plaintiff nor the other protesters complied with the order.

Approximately two-and-a-half minutes later, Deputy Sumner and other law enforcement officers began walking toward the crowd. ECF No. 22-4, 4:10-4:40. Many protesters made noise and cursed at law enforcement while they moved in the direction

3

of the vehicles parked on the side of the road. ECF No. 22-4, 4:10-5:30. One protester stopped walking toward the vehicles and declined a police officer's invitation to leave and avoid jail. ECF No. 22-4, 5:30-5:40. She was arrested. ECF No. 22-4, 5:40-5:45. Other protesters continued to move toward their vehicles and were permitted to leave. ECF No. 22-4, 5:45-5:55.

Plaintiff started walking toward Deputy Sumner and parallel to the vehicles.



ECF No. 22-4, 5:50[1]

---

[1] Plaintiff is identified with a red arrow in these screen grabs. He is wearing a dark hoodie sweatshirt and carrying a cymbal. ECF No. 22-5, 24:11-12; 84:3-5.



ECF No. 22-4, 5:53.



ECF No. 22-4, 5:58.

Plaintiff declared "this is public property," to which Deputy Sumner replied, "no, it's not, it's state, leave or you will go to jail." ECF No. 22-4, 5:58-6:03. Plaintiff started walking toward the roadway, then turned around and stopped walking, continuing to play the

cymbal, and then took a small step toward Deputy Sumner. ECF No. 22-4, 6:03-6:14; ECF No. 22-5, 32:6-10.

Deputy Sumner decided to arrest Plaintiff for refusing to comply with his directive to leave the area. ECF No. 22-1, pp. 3-4. Deputy Sumner told Plaintiff to "come here" to submit to arrest, and Plaintiff refused to comply with that directive, as well. ECF No. 22-4, 06:15-06:20; ECF No. 22-2, 46:12-20; ECF No. 22-1, pp. 3-4. Deputy Sumner did not arrest other protesters who continued to move toward their vehicles. ECF No. 22-2, 45:19-22.

Nearly four-and-one-half minutes elapsed between the time Deputy Sumner warned Plaintiff he had 30 seconds to leave or he would be arrested for trespassing and Plaintiff's arrest. ECF No. 22-4, 1:14-6:14. Despite the passage of more than four minutes, Plaintiff did not return to his vehicle which was probably less than 100 feet away from him at the time Deputy Sumner made the announcement. ECF No. 22-5, 32:23-33:5.

Deputy Sumner placed Plaintiff in handcuffs and directed him to walk, while maintaining a grip on Plaintiff's arm. Complaint, ECF No. 1, ¶ 18; ECF No. 22-4, 6:47-6:52; Cell Phone Video, ECF No. 22-6, 0:00-0:10. Plaintiff initially complied. ECF No. 22-4, 6:47-6:52; ECF No. 22-6, 0:00-0:10. In what Plaintiff describes as "an act of passive resistance[2]…," Plaintiff then decided to "go limp," lift his legs, and refuse to walk. Complaint, ECF No. 1, ¶ 18; ECF No. 22-5, 38:9-15; ECF No. 22-4, 6:47-6:52; ECF No. 22-6, 0:10-0:11. Deputy Sumner adjusted his custodial grip and attempted to get Plaintiff

---

[2] In his Complaint, Plaintiff claimed, "he was arrested for lawfully exercising his First Amendment rights…" Complaint, ECF No. 1, ¶ 18. Plaintiff does not challenge the validity of his arrest – nor could he, as he pleaded nolo contendere to trespass after warning and opposing an officer without violence. See Judgement and Sentence, Bradford County Case No. 2020 MM 1051, ECF No. 22-7.

to walk. ECF No. 22-2, 53:5-14; ECF No. 22-4 6:52-6:55. Plaintiff started to shuffle his feet and provide assistance in carrying his body weight, then lifted his legs again. ECF No. 22-4, 6:55-6:57; ECF No. 22-6, 0:11-0:14. Plaintiff fell to the ground. ECF No. 22-4 6:57; ECF No. 22-6, 0:14-0:15. As Plaintiff fell, Deputy Sumner lost his footing. ECF No. 22-4, 6:57; ECF No. 22-6, 0:14-0:15; ECF No. 22-2, 55:19-24; 56:5-23.



ECF No. 22-4, 06:57.

As Plaintiff's body struck the ground, Deputy Sumner left knee contacted Plaintiff's right hamstring, and Deputy Sumner's hands contacted the right side of Plaintiff's lower back. ECF No. 22-4, 06:57.

Another Sheriff's deputy assisted Deputy Sumner in relocating Plaintiff to a patrol vehicle. ECF No. 22-4, 07:00-07:04; ECF No. 22-6, 0:15-0:21. Plaintiff again lifted his legs and again nearly faceplanted. ECF No. 22-4, 4-07:07; ECF No. 22-6, 0:21-0:24. Ultimately, Plaintiff had to be dragged to a patrol vehicle. ECF No. 22-4, 07:07-07:40;

ECF No. 22-6,  0:24-0:30. Video footage shows – and Plaintiff concedes – that the scene was "chaotic." ECF No. 22-5, 52:15-53:4.

Deputy Sumner never pushed Plaintiff to the ground. ECF No. 22-2, 55:25-56:3; 56:18-23. Plaintiff concedes that at the time he decided he was no longer going to support his own body weight, he would have liked Deputy Sumner to gently put him down on the ground until there were enough law enforcement officers to carry him. ECF No. 22-5, 45:11-22, 46:8-18. However, when Plaintiff (a 39-year-old man weighing between 175 and 180 pounds) suddenly and without any notice stopped supporting any of his body weight, Deputy Sumner, despite his best efforts, was simply not able to *prevent* Plaintiff from hitting the ground, and instead could only *follow* Plaintiff to the ground. ECF No. 22-2, 55:19-56:23; ECF No. 22-5, 60:5-6; ECF No. 22-1, p. 1. As Plaintiff concedes, "I think it was the process of one person trying to carry someone they couldn't carry by themselves." ECF No. 22-5, 60:2-4.

## MEMORANDUM OF LAW

As detailed below, Deputy Sumner did not use force on Plaintiff in the legal context, rendering each of Plaintiff's claims meritless. Moreover, Plaintiff cannot identify any evidence to support his claim that the force allegedly used by Deputy Sumner (if any) was in retaliation for Plaintiff's protected speech. Independently, immunities – qualified immunity on Plaintiff's section 1983 claims and statutory immunity on the state assault and battery claim – shield Deputy Sumner from any liability whatsoever.

### A.    The Summary Judgment Standard

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

*Benoit v. City of Lake City, Florida*, 343 F. Supp. 3d 1219, 1229 (M.D. Fla. 2018). "Substantive law determines the materiality of facts, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Gill v. Inch*, No. 3:20-cv-535, 2023 WL 2432323, *2 (M.D. Fla. March 9, 2023) (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "A mere scintilla of evidence in support of the non-moving party's position is insufficient to defeat a motion for summary judgment." *Benoit*, 343 F. Supp. 3d at 1229, (*quoting Kesinger ex rel. Estate of Kesinger v. Herrington*, 381 F.3d 1243, 1247 (11th Cir. 2004)).

In *Scott v. Harris*, 550 U.S. 372, 380-81 (2007), the Supreme Court held that when uncontroverted video evidence is available, the court should "view the facts in the light depicted by the videotape." *Scott's* holding was based upon the general principle that "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id. at 380*.; s*ee also Singletary v. Vargas*, 804 F.3d 1174, 1183 (11th Cir. 2015); *Brooks v. Miller*, 78 F.4th 1267, 1278 (11th Cir. 2023) ("if a valid recording completely and clearly contradicts a party's testimony, that testimony is not credible, and the court should disregard it."); *Bowman v. Harvey*, No. 3:22-cv-545, 2024 WL 1299280, *6 (M.D. Fla. March 27, 2024).

## B.    Qualified Immunity

Qualified immunity balances two important interests: 1) the need to hold public officials who abuse their power accountable; and 2) the need to shield officials who perform their duties reasonably from harassment, distraction, and liability. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). The doctrine protects government officials from suit

so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Id.* (*citing Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

To be clearly established, a right must be sufficiently clear that every reasonable official would have known that what he is doing violates that right. *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (*quoting Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)) (internal quotations omitted). "In other words, 'existing precedent must have placed the statutory or constitutional question beyond debate.'" *Reichle,* 566 U.S. at 664 (*quoting Ashcroft*, 563 U.S. at 741). The defense protects "all but the plainly incompetent or those who knowingly violate the law." *Davis v. Waller*, 44 F.4th 1305, 1312 (11th Cir. 2022) (*quoting Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

Qualified immunity is a question of law for the court to decide, preferably on pretrial motions. *Ansley v. Heinrich*, 925 F.2d 1339, 1348 (11th Cir. 1991) (citations omitted). Defendants who establish that there is no genuine issue of material fact preventing them from being entitled to qualified immunity should be protected under the doctrine at the summary judgment stage. *Simmons v. Bradshaw*, 879 F.3d 1157, 1163 (11th Cir. 2018).

To be entitled to qualified immunity, a government official must show that he was acting within the scope of his discretionary authority at the time of the alleged wrongful acts. *Davis*, 44 F.4th at 1312 (citations omitted). There is no dispute on this issue in this case.

To overcome the defense of qualified immunity, a plaintiff must show that a defendant violated a constitutional right and that the right was "clearly established." *Corbitt v. Vickers*, 929 F.3d 1304, 1311 (11th Cir. 2019). The court has discretion to

decide which question to address first, *Pearson*, 555 U.S. at 236, and "qualified immunity will protect the defendant if the answer to either question is 'no.'" *Moss v. Dixon*, No. 3:21-CV-1026, 2023 WL 3687809, at *11–12 (M.D. Fla. May 26, 2023), (*citing Pearson*, 555 U.S. at 223, 232, 236; *Underwood v. City of Bessemer*, 11 F.4th 1317, 1328 (11th Cir. 2021)). In *Davis*, the Eleventh Circuit identified the three ways a plaintiff can prove a particular constitutional right is clearly established:

> First, a plaintiff can show that a materially similar case has already been decided. ... This category consists of binding precedent tied to particularized facts in a materially similar case. "[A] case that is fairly distinguishable from the circumstances facing a government official cannot clearly establish the law for the circumstances facing that government official [ ]." … Only materially similar cases drawn from the United States Supreme Court, this Circuit, and/or the highest court of the relevant state can clearly establish the law.

> Second, a plaintiff can also show that a broader, clearly established principle should control the novel facts of a particular case. "[T]he principle must be established with obvious clarity by the case law so that every objectively reasonable government official facing the circumstances would know that the official's conduct did violate federal law when the official acted."

> Finally, a plaintiff can establish that the case "fits within the exception of conduct which so obviously violates [the] [C]onstitution that prior case law is unnecessary." … This test is a narrow category encompassing those circumstances where "the official's conduct lies so very obviously at the very core of what the [relevant constitutional provision] prohibits that the unlawfulness of the conduct was readily apparent to the official, notwithstanding lack of case law."

*Davis*, 44 F.4th at 1312-13 (citations and quotations omitted); *see also Poulin v. Bush*, 650 F. Supp. 3d 1280 (M.D. Fla. 2023).

### C.   Argument – Plaintiff's Excessive Force Claim Fails

#### 1.   Deputy Sumner Did Not Use Unreasonable Force on Plaintiff

Plaintiff contends the "force" Deputy Sumner allegedly used is as follows: "Defendant then lifted Plaintiff by the back of his arms, dragged him several steps and

then deliberately slammed him down onto the ground face-first while his hands were restrained behind his back:" ECF No. 1, ¶ 19. Paragraph 19 of Plaintiff's Complaint contains two screen grabs (presumably taken from a cell phone video by another protestor and footage from Deputy Sumner's body-worn camera). Later in his Complaint, Plaintiff alleges that Deputy Sumner "violently threw" and "intentionally slammed" Plaintiff to the ground. ECF No. 1, ¶¶ 25, 33, 42.

At his deposition, Plaintiff claimed he was "thrown to the ground…," "driven to the ground…," and "slammed to the ground…" ECF No. 22-5, 39:1-8. Plaintiff also claimed that Deputy Sumner applied "significant force and intentional force on [his left] shoulder" by "driving [him] to the ground and putting enough weight on one specific shoulder that it would be injured." ECF No. 22-5, 39:4-8, 16-23.

Beyond these *allegations*, however, the uncontroverted video *evidence* available in this case – footage from Deputy Sumner's body-worn camera and the cell phone video taken by another protester – establishes that Deputy Sumner was not violent at any point of his entire interaction with Plaintiff, and that Plaintiff injured himself when he essentially threw himself on the ground with no purposeful or deliberate acceleration by Deputy Sumner. No objective review of the available video footage supports Plaintiff's bald assertion that he was "thrown" or "slammed" to the ground, or that Deputy Sumner put any weight whatsoever on Plaintiff's left shoulder.

Plaintiff is entitled to his own opinions on many issues – like whether prisons should exist, or not. However, Plaintiff is not entitled to his own facts. Even a cursory review of the video evidence in this case establishes that Deputy Sumner attempted to prevent Plaintiff from going to the ground. To be sure, as Plaintiff stops supporting his own weight

and starts falling to the ground, Deputy Sumner can be seen standing <u>next to</u> Plaintiff, attempting to stop him from falling, and slowing his descent to the ground.



ECF No. 22-6, 0:14.

It is only when Deputy Sumner loses his own footing and falls that his left knee contacts Plaintiff's right hamstring and his hands contact the right side of Plaintiff's lower back. By then, Plaintiff's left shoulder had already struck the ground as a result of Plaintiff's decision to resist Deputy Sumner by throwing himself on the ground while handcuffed. At no point did Deputy Sumner place any weight or apply any force to Plaintiff's left shoulder.

13

Even if Deputy Sumner's inability to keep Plaintiff upright is somehow viewed as "force," it is not excessive under applicable law. In evaluating a claim of excessive force, courts must "determine reasonableness from the perspective of a reasonable officer on the scene at the time the events unfolded." *Baxter v. Santiago-Miranda*, No. 23-11902, 2024 WL 4762616, at *9 (11th Cir. Nov. 13, 2024) (*quoting Tillis ex rel. Wuenschel v. Brown*, 12 F.4th 1291, 1298 (11th Cir. 2021)).

"The 'reasonableness' inquiry in an excessive force case is an objective one: the question is whether the officer's actions are 'objectively reasonable' in light of the facts and circumstances confronting him, without regard to his underlying intent or motivation." *Kesinger*, 381 F.3d at 1248 (*citing Graham v. Connor*, 490 U.S. 386, 387 (1989)).  "In order to determine whether the amount of force used by a police officer was proper, a court must ask 'whether a reasonable officer would believe that this level of force is necessary in the situation at hand.'" *Lee v. Ferraro*, 284 F.3d 1188, 1197 (11th Cir. 2002) (citation omitted).

This standard "must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396-97. The standard for reasonableness "is not capable of precise definition or mechanical application" but rather "requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Id*. at 396 (internal citation and quotations omitted). The results of excessive force claims "depend[] very much on the facts of each case." *Stephens v. DeGiovanni*, 852 F.3d 1298, 1315 (11th Cir. 2017) (*citing Brosseau v.*

*Haugen*, 543 U.S. 194, 201 (2004)).  "Reconsideration will nearly always reveal that something different could have been done if the officer knew the future before it occurred." *Carr v. Tatangelo,* 338 F.3d 1259, 1270 (11th Cir. 2003) (internal quotation and citation omitted).

The Eleventh Circuit has made clear that some use of force by a police officer when making a custodial arrest is necessary and altogether lawful, regardless of the severity of the alleged offense. *See Ferraro*, 284 F.3d at 1197 ("'Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it.'" (*quoting Graham*, 490 U.S. at 396). Furthermore, "the application of de minimis force, without more, will not support a claim for excessive force in violation of the Fourth Amendment." *See Nolin v. Isbell*, 207 F.3d 1253, 1257 (11th Cir. 2000).

Here, Deputy Sumner's use of force, if any, was not violative of the Fourth Amendment. On this issue, *Buckley v. Haddock*, 292 Fed. Appx. 791 (11th Cir. 2008), is instructive. In *Buckley*, a motorist refused to sign a traffic citation as required by Florida law. 292 Fed. Appx. at 792. A deputy sheriff warned the motorist that, if he did not sign the citation, he would be arrested. *Id*. After the second warning, the motorist said "arrest me," and allowed himself to be handcuffed. *Id*. The deputy started to walk with the motorist to the patrol car. *Id*. The motorist – a 23-year-old man who weighed 180 pounds and was 6 feet, 2 inches tall – dropped to the ground behind his car. *Id*. The deputy asked the motorist several times to stand up, but the motorist did not do so. *Id*. The deputy then attempted to lift the motorist to his feet, but the motorist remained limp and did not stand. *Id*. After repeatedly and plainly warning the motorist that a taser device would be used (to

which Plaintiff shouted, "I don't care anymore—tase me") and after giving the motorist some time to comply, the deputy discharged the taser. *Id*. The deputy discharged five-second bursts of the taser a total of three times. *Id*. at 793. The motorist suffered sixteen small burn marks on his back with some scarring. *Id*.

The Eleventh Circuit held that the deputy's use of force was not outside the range of reasonable conduct under the Fourth Amendment, holding:

> Although … the underlying offense of refusing to sign a traffic citation was relatively minor, we nevertheless credit the government with a significant interest in enforcing the law on its own terms, rather than on terms set by the arrestee. The government has an interest in arrests being completed efficiently and without waste of limited resources: police time and energy that may be needed elsewhere at any moment. Even though Plaintiff was handcuffed, he still refused repeatedly to comply with the most minimal of police instructions – that is, to stand up and to walk to the patrol car. That Plaintiff was resisting arrest weighs in the deputy's favor.

*Id*. at 794.

The Court held further "[t]hat Plaintiff did not attack or menace the deputy does not shield Plaintiff from the use of force, even if it might result in pain." *Id*. at 794 n.7 (*citing Forrester v. City of San Diego*, 25 F.3d 804, 807–08 (9th Cir. 1994) (concluding that there was no violation of the Fourth Amendment where officers used pain compliance techniques – which caused injuries including bruises, a pinched nerve, and one broken wrist – to move demonstrators who were passively resisting arrest)).

The Court also rejected any suggestion that the motorist had been fully secured because he was handcuffed, noting that he was not bound at the feet (so, he could both run and kick), he was moving around on the ground alongside a busy road, and he would not comply with the deputy's repeated instructions to stand up and to move to the patrol car where he could be confined. *Id*. at 795. "An objectively reasonable police officer could

16

rightly believe that force was therefore necessary to secure the non-compliant Plaintiff in the patrol car and thereby complete the arrest." *Id*.

Finally, the Court rejected the notion that had the deputy "simply waited for back up, two officers could have lifted [Plaintiff] and carried him to the car without any application of force." *Id*. "A single officer in the deputy's situation confronting a non-compliant arrestee like Plaintiff need not – as a matter of federal constitutional law – wait idly for backup to arrive to complete an otherwise lawful arrest that the officer has started." *Id*.

> The federal courts must not dictate through their interpretation of the Constitution how the police should allocate their limited resources. In most circumstances where an arrestee is resisting, a single officer can constitutionally effectuate an otherwise lawful arrest by resorting to the use of moderate, nonlethal force. No constitutional basis exists for requiring two or more officers to make routine arrests, even if deploying more officers might result in less force actually being used. *See Menuel v. City of Atlanta*, 25 F.3d 990, 996–97 (11th Cir.1994) ("'The Fourth Amendment does not require officers to use the least intrusive or even less intrusive alternatives in search and seizure cases. The only test is whether what the police officers actually did was reasonable.'") (*quoting Plakas v. Drinski*, 19 F.3d 1143, 1149 (7th Cir.1994)).

*Id*. at 796.

Of course, *Buckley* is not directly analogous to this case. First, Deputy Sumner did not deliberately and intentionally apply force on Plaintiff as the deputy did to the motorist in *Buckley*. Nonetheless, the legal analysis in *Buckley* mandates the same result here. Deputy Sumner lawfully detained Plaintiff on charges to which he later pleaded no contest. However, Deputy Sumner could not "complete the arrest" because Plaintiff (mistakenly) believed he had a right to continue to resist and force Deputy Sumner to wait until one or more additional law enforcement officers could carry Plaintiff to a patrol car. Here, Plaintiff does not have the right to dictate the terms by which he will allow himself

17

to be arrested – especially not when law enforcement officers – including Deputy Sumner – are surrounded (and outnumbered) by angry protesters who are outwardly antagonistic to law enforcement. Any use of force tangential to Deputy Sumner's attempt to get Plaintiff to comply with his direct instruction to "walk" cannot be unconstitutionally excessive.

### 2. Deputy Sumner Enjoys Qualified Immunity from Plaintiff's Excessive Force Claim

Because Deputy Sumner did not violate Plaintiff's constitutional rights, he is entitled to qualified immunity under the first prong. Even if Deputy Sumner's use of force was excessive under the Fourth Amendment (which it is not), Deputy Sumner is nonetheless entitled to qualified immunity under the second prong because he did not violate a clearly established federal right of Plaintiff. Plaintiff has not identified any case that would have put Deputy Sumner on notice that the use of, at worst, moderate, non-lethal force on a handcuffed arrestee who continues to resist is unlawful. The Court in *Buckley* distinguished other cases denying qualified immunity where law enforcement officers used force against arrestees who were already handcuffed and not resisting in any way. *Id*. at 798 ("…here Plaintiff did resist: for example, he physically dropped to the ground, repeatedly refused to comply with the deputy's reasonable orders (even after being warned that a taser would be used), and made no effort to stand when the deputy attempted on two occasions physically to lift Plaintiff to his feet."). No case since *Buckley* compels a different result here.

### D. Argument – Plaintiff's First Amendment Retaliation Claim Fails

### 1. Deputy Sumner Did Not Retaliate Against Plaintiff

Plaintiff alleges Deputy Sumner "violated the First Amendment by acting in retaliatory conduct which adversely affected Plaintiff's protected speech and right to

petition. Specifically, as a result of Plaintiff's speech, Defendant violently threw Plaintiff to the ground while he was handcuffed behind his back." ECF No. 1, ¶ 33.

Plaintiff's First Amendment Retaliation claim fails because Plaintiff cannot identify any evidence to connect his injury to his engaging in protected speech. As described in detail above, Plaintiff was injured when he stopped supporting his own weight while his hands were cuffed behind his back. Plaintiff falling, and Deputy Sumner falling behind him, had nothing to do with Plaintiff's speech. To be sure, had Plaintiff complied with Deputy Sumner's lawful order to walk to his patrol vehicle, he would not have fallen to the ground and would not have suffered any physical injury that day.

The Eleventh Circuit has held that "[a] plaintiff suffers adverse action if the defendant's allegedly retaliatory conduct would likely deter a person of ordinary firmness from the exercise of First Amendment rights." *Bennett v. Hendrix*, 423 F.3d 1247, 1254 (11th Cir. 2005). As discussed above, Deputy Sumner did not use any force on Plaintiff at any time during his arrest. Plaintiff does not allege, and cannot establish, that Deputy Sumner falling on his back would deter him or a person of ordinary firmness from exercising their First Amendment rights. Such an injury might deter any reasonable person from surprising their arresting officer by suddenly "going limp" while cuffed, but such a result would not implicate the First Amendment.

Also, Plaintiff cannot identify any evidence to support the assertion that Deputy Sumner had the time to decide – mid-fall – that he wanted to land on Plaintiff in a way that would cause Plaintiff injury. For these reasons, Plaintiff's First Amendment Retaliation claim fails, and Deputy Sumner is entitled to final summary judgment in his favor.

**2.      Deputy Sumner Enjoys Qualified Immunity from Plaintiff's First Amendment Retaliation Claim**

Because Deputy Sumner did not violate Plaintiff's constitutional rights, he is entitled to qualified immunity under the first prong. Even if Deputy Sumner's actions can somehow be viewed as retaliatory against Plaintiff and such that would deter a person of ordinary firmness from exercising their First Amendment rights, Deputy Sumner is nonetheless entitled to qualified immunity under the second prong because he did not violate a clearly established federal right of Plaintiff. There is no materially similar case already decided that would have put Deputy Sumner on notice that any of his actions were violative of anyone's constitutional rights.

**E.      Argument – Plaintiff's Assault and Battery Claim Fails**

**1.      Deputy Sumner Did Assault or Batter Plaintiff**

Under Florida law, "[a]n 'assault' is an intentional, unlawful offer of corporal injury to another by force, or exertion of force directed toward another under such circumstances as to create a reasonable fear of imminent peril." *See Sullivan v. Atl. Fed. Sav. & Loan Ass'n*, 454 So. 2d 52, 54 (Fla. 4th DCA 1984). Here, Plaintiff does not even allege that Deputy Sumner threatened or offered injury to Plaintiff. Moreover, the record evidence in this matter establishes that – at worst – Plaintiff fell, and Deputy Sumner lost his balance and fell on top of Plaintiff. The entire incident was over in less than one second. Again, Deputy Sumner did not offer corporal injury, threaten force, or exert force to create fear of imminent peril. Plaintiff's assault claim wholly fails.

Plaintiff's battery claim fares no better. Under Florida law, "[a] battery claim [against a law enforcement officer] for excessive force is analyzed by focusing upon whether the amount of force used was reasonable under the circumstances." *City of Miami v. Sanders*,

672 So. 2d 46, 47 (Fla. 3d DCA 1996) (citations omitted). "If excessive force is used in an arrest, the ordinarily protected use of force by a police officer is transformed into a battery." *Id*. Courts assess state-law battery claims regarding excessive force under a "similar standard" to that governing Fourth Amendment excessive force claims. *Sullivan v. City of Pembroke Pines*, 161 Fed. Appx. 906, 911 (11th Cir. 2006) (*citing Sanders*, 672 So. 2d at 47).

As discussed above, based on the undisputed record evidence in this case, Plaintiff's excessive force claim fails as matter of law. His battery claim suffers the same fate.

### 2.   Deputy Sumner Enjoys Statutory Immunity from Plaintiff's Assault and Battery Claims

Additionally, Florida law grants immunity to public employees for tort actions unless they "acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property." *See* § 768.28(9)(a), *Fla. Stat*. Courts are reluctant to strip officers of their immunity under this section. *Swenson v. Palecek*, No. 3:19-cv-821, 2021 WL 2917633, *5 (M.D. Fla. July 12, 2021).

Florida courts have equated the bad faith prong of section 768.28(9)(a) with the actual malice standard, which means the conduct must be committed with "ill will, hatred, spite, [or] an evil intent." *Reed v. State*, 837 So. 2d 366, 368–69 (Fla. 2002) (citation omitted); *see also Peterson v. Pollack*, 290 So. 3d 102, 109 (Fla. 4th DCA 2020) (citing cases). Conduct is considered "wanton" if performed "with a conscious and intentional indifference to consequences and with the knowledge that damage is likely to be done to persons," while "willful" conduct is conduct performed "intentionally, knowingly and purposely." *Id*. at 110; *Williams v. City of Minneola*, 619 So. 2d 983, 987 (Fla. 5th DCA

1993) (holding a finding of recklessness also could support a finding of "willful and wanton conduct under section 768.28(9)"); s*ee also Valdes v. Crosby*, 390 F. Supp. 2d 1084, 1108 (M.D. Fla. 2005), *aff'd*, 450 F.3d 1231 (11th Cir. 2006) (noting the standard to overcome statutory immunity "is at least as high as the standard needed to prove" an officer was deliberately indifferent to an inmate's health or safety under § 1983) (*citing Williams*, 619 So. 2d at 986).

In the instant case, Plaintiff cannot show evidence that Deputy Sumner acted in a way to meet or exceed this standard. The videos support Deputy Sumner's assertion that he was attempting to get Plaintiff to walk to the patrol vehicle, but when Plaintiff lifted his legs, Plaintiff fell and Deputy Sumner fell on top of him. Even Plaintiff thinks "it was the process of one person trying to carry someone they couldn't carry by themselves." ECF No. 22-5, 60:2-4. This is, at absolute worse, mere negligence, and falls well short of satisfying the actual malice standard necessary to support a finding of liability against Deputy Sumner under Florida law. Deputy Sumner is entitled to final summary judgment on Plaintiff's assault and battery claims for this additional reason.

## CONCLUSION

For the foregoing reasons, Defendant Deputy Dalton Sumner respectfully requests this Honorable Court grant the instant motion, enter final summary judgment in his favor, and grant any other relief this court deems proper.

Dated this 3rd day of December, 2024.

Respectfully submitted,

*/s/ Matthew J. Carson*
**MATTHEW J. CARSON**
Florida Bar No. 0827711
E-mail: mcarson@sniffenlaw.com
**MICHAEL P. SPELLMAN (Lead Counsel)**
Florida Bar No. 937975
E-mail: mspellman@sniffenlaw.com

**SNIFFEN & SPELLMAN, P.A.**
123 North Monroe Street
Tallahassee, Florida 32301
Telephone: (850) 205-1996
Facsimile: (850) 205-3004
*Attorney for Defendant*

## CERTIFICATE OF SERVICE

The undersigned certifies that on this 3rd day of December, 2024, a true and correct copy of the foregoing was electronically filed in the U.S. District Court, Middle District of Florida, Jacksonville Division using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

*/s/ Matthew J. Carson*
**MATTHEW J. CARSON**

23