

1  UNITED STATES DISTRICT COURT

2  MIDDLE DISTRICT OF FLORIDA

3  JACKSONVILLE DIVISION

4  CASE NO.: 3:23-cv-1428-WWB

5

6  PETER (PANAGIOTI) TSOLKAS,

7  Plaintiff,

8

9  V.

10

11  DEPUTY DALTON SUMNER,

12  Defendant.

13

14  DEPONENT:  DEPUTY DALTON SUMNER

15  DATE:      OCTOBER 7, 2024

16  REPORTER:  LANNAH TEAGUE

17

18

19

20

21

22

23

24

25

MILESTONE I REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

407.423.9900
Fax 407.841.2779
Toll Free 855-MYDEPOS

401 EAST JACKSON STREET,
SUITE 2370
TAMPA, FL 33602

315 EAST ROBINSON STREET,
SUITE 510
ORLANDO, FLORIDA 32801
CORPORATE

```
 1                        APPEARANCES

 2  ON BEHALF OF THE PLAINTIFF, PETER (PANAGIOTI) TSOLKAS:
    James M. Slater, Esquire
 3  Slater Legal, PLLC
    113 South Monroe Street
 4  Tallahassee, Florida 32301
    Telephone No.: (305) 523-9023
 5  E-mail: james@slater.legal
    (Appeared via videoconference)
 6
    And
 7
    Joshua Tarjan, Esquire
 8  The Tarjan Law Firm, P.A.
    12372 Southwest 82 Avenue
 9  Pinecrest, Florida 33156
    Telephone No.: (305) 423-8747
10  E-mail: josh@tarjanlawfirm.com
    (Appeared via videoconference)
11
    ON BEHALF OF THE DEFENDANT, DEPUTY DALTON SUMNER:
12  Matthew Joseph Carson, Esquire
    Sniffen & Spellman, P.A.
13  123 North Monroe Street
    Tallahassee, Florida 32301
14  Telephone No.: (850) 205-1996
    E-mail: mcarson@sniffenlaw.com
15  (Appeared via videoconference)

16

17

18

19

20

21

22

23

24

25
```

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

                          INDEX

                                              Page

PROCEEDINGS                                      5

DIRECT EXAMINATION BY MR. SLATER                 6

CROSS-EXAMINATION BY MR. CARSON                 84


                        EXHIBITS

Exhibit                                       Page

    1      FIBRS Incident Report               19

    2      Deputy Sumner's Bodyworn Camera     27

           Footage

    3      Dec 06, 2020, 4 28 26 PM            49

    4      Limits Of Authority                 58

    5      Mass Arrests Policy                 60

    6      Response To Resistance              74



MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**        **www.MILESTONEREPORTING.com**        **Toll Free 855-MYDEPOS**

STIPULATION

The deposition of DALTON SUMNER was taken at MILESTONE

REPORTING COMPANY, 315 EAST ROBINSON STREET, SUITE 510,

ORLANDO, FLORIDA 32801, via videoconference in which all

participants attended remotely, on MONDAY the 7th day of

OCTOBER 2024 at 10:02 a.m. (ET); said deposition was

taken pursuant to the FEDERAL Rules of Civil Procedure.

It is agreed that LANNAH TEAGUE, being a Notary Public

and Court Reporter for the State of FLORIDA, may swear

the witness and that the reading and signing of the

completed transcript by the witness is not waived.



**MILESTONE | REPORTING COMPANY**

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

1           PROCEEDINGS

2           THE REPORTER:  The time is 10:02 a.m.  We are

3      now on the record.  Will all parties except for the

4      witness please state your appearance, how you are

5      attending, and your location?

6           MR. SLATER:  This is James Slater on behalf of

7      Plaintiff, Peter Panagioti Tsolkas.  I'm appearing

8      virtually from Atlanta, Georgia.

9           MR. TARJAN:  This is Josh Tarjan.  I'm Mr.

10     Slater's co-counsel, and I'm appearing from Miami.

11          MR. CARSON:  And I'm Matt Carson.  I'm with

12     Sniffen & Spellman.  I'm in Tallahassee, Florida,

13     and we represent Dalton Sumner.

14          THE REPORTER:  Thank you all.  Mr. Sumner,

15     will you please state your full name for the

16     record?

17          THE WITNESS:  Dalton Sumner.

18          THE REPORTER:  Thank you, sir.  Mr. Sumner,

19     will you please hold up your ID to the camera?

20     Thank you, sir.  Do all parties agree that the

21     witness is, in fact, Mr. Sumner?

22          MR. SLATER:  Yes.

23          MR. CARSON:  Yes.

24          THE REPORTER:  Thank you.  Mr. Sumner, will

25     you please raise your right hand for me?  Thank



**MILESTONE | REPORTING COMPANY**

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

1            BY MR. SLATER:

2      Q.    Okay.

3      A.    -- is what it sounds like.

4      Q.    Okay.  And take it referring to this sort of

5  loudspeaker?

6      A.    Correct.

7      Q.    Okay.  All right.  And I see that it appears

8  your taser is still pointed in the direction of some of

9  these folks.  Do you see that?

10     A.    Looks -- from that angle, it looks like it's

11 pointed at the ground at that point.

12     Q.    Okay.  What about now?  I'm stopped at 5:57.

13 Would you say it's still pointed at the ground?

14     A.    Yes, sir.

15     Q.    I'm stopping now just to here.  It's

16 still 5:57.

17     A.    Yeah.

18     Q.    Okay.  Do you recognize -- I'm at 5:57.  Do

19 you recognize this man with the symbol and the what

20 appears to be a red mask over his face?

21     A.    Yeah, that appears to be Mr. Peter.

22     Q.    Okay.  The plaintiff in this case?

23     A.    Correct.

24     Q.    Okay.  Okay.  And at this point, would you

25 say your taser is still pointed at the ground?

MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**          **www.MILESTONEREPORTING.com**          **Toll Free 855-MYDEPOS**

1      A.   With him being closer to the proximity of me,

2   it -- it's probably pointed at him at this point.

3      Q.   Okay.  And we see, at this point in time, he

4   is between you and these cars; is that right?  Is that

5   a fair statement?

6      A.   Yes, sir.

7      Q.   Okay.  So I'm going to continue to play the

8   video.

9           (VIDEO RECORDING PLAYED)

10           UNIDENTIFIED SPEAKER:  -- jail.

11           MR. TSOLKAS:  This is public property.

12           MR. SUMNER:  No, it's not.

13           (VIDEO RECORDING STOPPED)

14           BY MR. SLATER:

15      Q.   And you hear him say this is public property?

16      A.   I do.

17      Q.   And your response is, this is not?

18      A.   Correct.

19           (VIDEO RECORDING PLAYED)

20           MR. SUMNER:  No, it's state.

21           (VIDEO RECORDING STOPPED)

22           BY MR. SLATER:

23      Q.   Okay.  And you say, it's state?

24      A.   Yes, sir.

25      Q.   Okay.

MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900        www.MILESTONEREPORTING.com        Toll Free 855-MYDEPOS

```
1              (VIDEO WAS PLAYED)

2              BY MR. SLATER:

3       Q.   Okay.  Okay.  We're at 6:12.  It looks like

4   you've gone back and forth, turn to left, turn to the

5   right, at least one or two times.  Do you see that?

6       A.   Yes, sir.

7       Q.   Okay.  So fair to say you're still observing

8   your surroundings?

9       A.   Yes, sir.

10      Q.   Okay.  All right.  So 6:12, and we see that

11  Mr. Tsolkas is standing there by -- closer to the hood

12  of this sort of gray sedan.  Do you see that?

13      A.   Yes.

14      Q.   Okay.  Do you know whether he's on DOC or DOT

15  property at that time?

16      A.   No.

17      Q.   Okay.  I'm going to continue to play 6:12.

18             (VIDEO WAS PLAYED)

19             BY MR. SLATER:

20      Q.   Okay.  And so 6:15, I'm pausing the video

21  again.  It looks like you are -- you've sort of shifted

22  your focus to the left a little bit here; is that

23  right?

24      A.   Yes, sir.  It appears so.

25      Q.   Okay.  And who is this -- who is this person
```



**MILESTONE | REPORTING COMPANY**

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

1  standing sort of to the left of your field of vision?

2       A.   That appears to be Sergeant Hullender.

3       Q.   Okay.  How far would you say he is from you

4  at that time?

5       A.   Man, it's -- it's hard to -- hard to judge

6  off of those body cameras.  He could be 10 foot, he

7  could be six foot, I'm not sure.  He's -- he's within

8  hearing range from me.

9       Q.   Okay.  And would you say no more than 20

10 feet?

11      A.   Yes, sir.

12      Q.   Okay.  I going to continue to play the video,

13 we're at 6:15.

14           (VIDEO WAS PLAYED)

15           BY MR. SLATER:

16      Q.   Okay.  So, at 6:16, you've turned back to Mr.

17 Tsolkas.  Do you see that?

18      A.   Yes, sir.

19      Q.   Okay.  I'm just going to play a little bit of

20 that interaction now.

21      A.   Okay.

22      Q.   I'm going to start at 6:15.

23           (VIDEO RECORDING PLAYED)

24           MR. TSOLKAS:  -- asshole.

25           MR. SUMNER:  Come here, man.  Come back.

MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

 1  to pick him up on your own?

 2      A.   Yes.  Obviously, you know, there was several

 3  more people than law enforcement officers there, so

 4  everybody was dealing something.

 5      Q.   Okay.  Do you remember any of -- you know, we

 6  - - do you remember any of the things that were said

 7  other than, fuck you, I'm not going to walk, before you

 8  picked up Mr. Tsolkas?

 9      A.   Whatever was said in the video.

10      Q.   Okay.

11      A.   It's -- it's obvious that the -- the audio's

12  there.

13      Q.   Okay.  Do you remember being called a fucking

14  pig?

15      A.   Whatever was said in the video, sir.  This

16  was four years ago.

17      Q.   Okay.  And I understand, you know, I'm just

18  -- and I'm not trying to use harsh language here, I'm

19  just -- that whatever was said was said, right?

20      A.   Yes, sir.  Yeah, the audio's pretty clear in

21  the video.

22      Q.   Okay.  Had you ever been called anything like

23  that before that day?

24      A.   I'm not sure.

25      Q.   Okay.  Do you remember how it felt to be



**MILESTONE | REPORTING COMPANY**

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

549596 Summer Deputfor Deposition 10-01-2024                    Page 38

```
 1   called --

 2       A.   The -- this incident was four years ago, sir.

 3   I don't remember my emotions that day.

 4       Q.   Okay.  I want to take you through a couple of

 5   -- let's see.  We'll mark this as Exhibit 4.  A couple

 6   of your standard operating guidelines from the Bradford

 7   County Sheriff's Office.  Can you see my screen?

 8            (EXHIBIT 4 MARKED FOR IDENTIFICATION)

 9       A.   Yes, sir.  Yeah.

10            BY MR. SLATER:

11       Q.   Okay.  This document, it's four pages, it's

12   titled, subject, Limits of Authority from the Bradford

13   County Sheriff's Office, standard operating guidelines.

14   Do you see this?

15       A.   I do.

16       Q.   Okay.  Have you reviewed this document

17   before?

18       A.   I have.

19       Q.   Okay.  Okay.  And so, it says, "Guideline:

20   The sheriff's office operates pursuant to the authority

21   vested in the sheriff by the Constitution of the State

22   of Florida and Florida Statutes."  And it says that,

23   "You -- the sheriff is appointing deputies to assist in

24   the performance of his duties, and those deputies may

25   use judgment and discretion in the execution of their
```

MILESTONE **|** REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

```
 1  -- of their duties."  Do you see that?

 2       A.   Yes, sir.

 3       Q.   Okay.  And so, one of these is -- I'm on Page

 4  2 now.  One of these sections is titled Officer

 5  Discretion, another one below that is titled

 6  Alternatives to Arrest.  Do you see that?

 7       A.   Yes, sir.

 8       Q.   Okay.  Do you know if you would -- do you

 9  know -- I'm just -- before I ask you some questions

10  about what those mean, how often would you have to

11  review these policies while you were --

12       A.   Upon -- upon initial hire.  And then, I

13  believe, I want to say it was once a year or once every

14  two years.

15       Q.   Okay.  And officer discretion, here it says

16  that "the decision for arrest should be made after

17  careful consideration of the following," and it lists a

18  series of factors and identifies different alternatives

19  to arrest, like giving them a notice to appear, a sworn

20  complaint in lieu of physical arrest.  You see that?

21       A.   Yes, sir.

22       Q.   Okay.  So, on December 6, 2020, you

23  understood that you had discretion in whether you would

24  arrest Mr. Tsolkas; is that right?

25       A.   Of course.  Yes, sir.
```

MILESTONE **|** REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

1        Q.   Okay.  Why did you decide to arrest him

2    rather than implementing an alternative to arrest?

3        A.   Because I was at my discretion.  I don't

4    remember the exact reason, but obviously, it was my

5    discretion to put him in handcuffs and take him to

6    jail.

7        Q.   Okay.  I want to show you another policy.

8    We'll mark this as Exhibit 5.  Let me know when you can

9    see my screen.

10            (EXHIBIT 5 MARKED FOR IDENTIFICATION)

11       A.   Yep, I can see it.

12            BY MR. SLATER:

13       Q.   Okay.  This one is also a Bradford County

14   Sheriff's Office, standary -- standard operating

15   guideline.  And the subject of this is Civil

16   Disturbances Mass Arrests.  And we see the effective

17   date is 2009, revised 2013, 2014.  Okay.  Would this

18   been -- would this have been one of the policies that

19   you reviewed upon hire?

20       A.   Yes, sir.

21       Q.   Okay.  And I see that this is a guideline for

22   civil disturbances and mass arrests.  Okay.  Would you

23   consider the protest to have been a civil disturbance?

24       A.   Yes, sir.

25       Q.   Okay.  And I'm just looking here on Page 5,

MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**          **www.MILESTONEREPORTING.com**          **Toll Free 855-MYDEPOS**

1  there's a definition.  "An interruption or disruption

2  of normal activities by a group or gathering of

3  people."  Okay.  All right.  So we're in agreement

4  there.  I want to look to -- there's a section under

5  Response to Resistance, Section 3, and down on Page 3,

6  it has a Sub D -- Subsection D titled Arrests.  Do you

7  see that?

8      A.   I do.

9      Q.   Okay.  And it says, "The incident commander

10 will direct that violators be arrested if the crowd

11 refuses to disperse after reasonable time following the

12 final warning."  Do you see that?

13     A.   I do.

14     Q.   Okay.  And we were in agreement that you --

15 because we watched it on your body-worn camera, that

16 you had given a warning with a time to disperse, right?

17     A.   Correct.

18     Q.   And that was you, not another officer, right?

19     A.   Yes, sir.  That was me in my body camera

20 video.

21     Q.   Okay.  And so there's several things that

22 this policy instructs from -- for arrests during a mass

23 arrest or civil disturbance.  And it discusses creating

24 a sort of perimeter, right?  A wedge formation for

25 crowd control, you see that in Subsection (2)?

MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE ORLANDO, FL 32801
JACKSONVILLE, FL 32256
TAMPA, FL 33602

407.423.9900        www.MILESTONEREPORTING.com        Toll Free 855-MYDEPOS

1    A.   Yes.

2    Q.   Okay.  And then Subsection 3, at the bottom

3  of Page 3 of this policy says, "If an arrestee is

4  seated and agrees to walk, he or she will be led from

5  the crowd to the transport vehicle by the arresting

6  deputy.  Two or more deputies will carry an arrestee

7  who is seated and refuses to walk."  Do you see that?

8    A.   Yes, sir.

9    Q.   Okay.  So, it's your understanding the policy

10 says that, when an -- a detainee in a civil disturbance

11 refuses to walk, that the policy says two or more

12 deputies are supposed to carry that individual?

13       MR. CARSON:  Object to form.

14       THE WITNESS:  Yes, sir.  Didn't -- didn't that

15    occur in the video?

16       BY MR. SLATER:

17    Q.   Let's go back to the video.  I'm going to --

18 I'm going to play the cell phone footage again.  Hold

19 on.

20    A.   I think the body camera footage shows a

21 little better depiction of it.

22    Q.   Okay.  We'll watch both.  Let me just go

23 back. So, we'll start with this.  I'm just going to

24 mute the sound, because it gets kind of loud at points.

25 Let me just go to -- so I think we stopped last at



**MILESTONE | REPORTING  COMPANY**

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

1    about here, 16 seconds in, right?

2         A.   That appears to be the case.

3         Q.   Ten seconds.  Okay.  Mr. Tsolkas on the

4    ground, you're behind him, above him at this point.

5    Okay.  So I'll play, starting at 15 seconds.  This was

6    previously marked as Exhibit 3, just so that we have a

7    good record here.  Okay.  All right.  So here, at 17

8    seconds, I see -- is that Sergeant Hullender?

9         A.   Yes, sir.

10        Q.   Walks up to you?

11        A.   Yes, sir.  Yes.

12        Q.   Okay.  And we established that, while you

13   were arresting Mr. Tsolkas, he was still -- he was

14   still -- he was standing, what I think we said, less

15   than five feet from you; is that right?

16        A.   At that point, yes, sir.  It appears so.

17        Q.   Okay.  Okay.  And that was -- I think that

18   was, what?  Let's see here.  I'm just going to go back.

19   So that was at six seconds in the body-worn camera,

20   he's there.  And so we're now at 17 seconds, I can see

21   -- 16 seconds, 17 seconds, I could see him walking up.

22   So that's about 10 seconds between when you were at the

23   car and now; is that right?

24             MR. CARSON:  Object to form.

25             BY MR. SLATER:

MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900        www.MILESTONEREPORTING.com        Toll Free 855-MYDEPOS

1    Q.   We're talking about 10 seconds between when

2  you were standing at the car and now.  Would that be

3  fair?

4    A.   Yes, sir.  That appears so.  10, 11 seconds

5  there.

6    Q.   Okay.  So, I'm going to keep playing.  So

7  we're at 17 seconds on this video, Exhibit 3.  And I

8  see -- okay.  So at this point, 21 seconds into the

9  video, it appears that both you and Sergeant Hullender

10  pick up Mr. Tsolkas; is that right?

11    A.   Yes, sir.

12    Q.   And 23 seconds, it appears that he, again, is

13  refusing to walk?

14    A.   Yes, sir.

15    Q.   Okay.  And who is this individual at 23

16  seconds on the timestamp, this individual standing next

17  to the folks --

18    A.   That is Sergeant Mosley.

19    Q.   Sergeant Mosley, with Bradford?

20    A.   Yes, sir.  With Bradford County.

21    Q.   Okay.  At this time, and I know we talked

22  about this white shirt down here, closer to FSP

23  entrance.  Do you -- we're a little bit -- we're zoomed

24  in a little bit more.  You recognize him?

25    A.   No, sir.

MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

543530 Summer Deputy Dejoie 10 of 2024         Page 18

1      Q.   Okay.  All right.  So, at this point it

2   appears that Mr. Tsolkas is, again, refusing to walk.

3   And so, it appears that the two of you drag him at this

4   point, right?  Is that fair?

5      A.   Yes, sir.

6      Q.   Okay.  And just before we go to the body-worn

7   camera footage.

8         MR. SLATER:  Madam Court Reporter, did I

9      identify the Mass Arrests as Exhibit 5?

10         THE REPORTER:  Yes, sir, you did.

11         MR. SLATER:  Okay.  Okay, good.  Just want to

12      make sure.

13          BY MR. SLATER:

14      Q.   All right.  Let's pull back up the BWC.

15   Let's see here.  Okay.  So, I have your body-worn

16   camera footage and we're just going to go -- okay.  One

17   second. Okay.  So, it looks like 6:57 -- here, wait.

18   Six minutes -- we'll start at 6:52.  So, you're walking

19   Mr. Tsolkas, then it -- you see your camera goes black

20   for a minute, kind of goes in and out.  Let me just

21   play it again so we can -- so I'm stopped at 6:57.  It

22   looks like kind of your arm is just kind of covering

23   the camera at a few times; is that right?

24      A.   Yeah.  It appears the contact between me and

25   him covered the camera.

MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

1        Q.   Okay.  So, six minutes -- let's go back a

2   second here.  So we'll just play at 6:52.  Okay.  And I

3   see here -- we're just watching the same thing we just

4   previously watched.  Okay.  I'm stopped here at 7:19.

5   It -- who is that with Ms. Chanzes?  Do you see an

6   officer holding her?

7        A.   That appears to be the officer that arrested

8   her from the City of Starke.

9        Q.   Okay.  And we're a little bit closer to this

10  gentleman in the white shirt.  It looks like a DOC

11  uniform to me, but I'm not sure.  Any better

12  recollection of who that might be?

13       A.   No idea who that is.

14       Q.   Okay.  All right.  At this time, while --

15  when you bring Mr. Tsolkas to the squad car with

16  Sergeant Hullender, were you aware of any injuries to

17  him?

18       A.   No, sir.

19       Q.   Okay.  But at some point you were -- you did

20  become aware of that, right?

21       A.   Yes, sir.

22       Q.   Okay.  Could you walk me through what you

23  guys did at that point?

24       A.   We put him in the car.

25       Q.   Okay.  But at some point, he was taken to the

MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

1  hospital; is that right?

2      A.   That's correct.

3      Q.   Okay.  Were you involved with that at all?

4      A.   I was.

5      Q.   Okay.  Did you observe his wound on his arm?

6      A.   Yes.  When we arrived to the Sheriff's Office

7  is when I observed it.  And then he was immediately

8  transported to the hospital.

9      Q.   Okay.

10     A.   I don't recall if it was by ambulance or if

11 it was by my patrol vehicle, but I do know he was -- he

12 was taken to the hospital for his injuries.

13     Q.   Okay.  Do you know who made that decision to

14 take him to the hospital?

15     A.   No, sir.

16         MR. SLATER:  Okay.  I want to show you --

17     actually, let -- let's take a quick break.  Matt,

18     we're not going to be too much longer, so -- but

19     let's just take a quick break and then we'll get

20     back on the record.  Can you take us off, Madam

21     Court Reporter?

22         THE REPORTER:  Yes, sir.  The time is 11:18

23     a.m., we are off the record.

24             (OFF THE RECORD)

25         THE REPORTER:  The time is 11:24 a.m., we're

**MILESTONE | REPORTING  COMPANY**

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

1    back on the record.

2        BY MR. SLATER:

3    Q.   All right, Mr. Sumner, I'm going to take you

4    through another Bradford County Sheriff's Office policy

5    in just a second.

6    A.   Okay.

7    Q.   Mark this as Plaintiff 6, and it is titled

8    Response to Resistance.  Now, this one has an effective

9    date after our incident.  Do you know of -- I'm just

10   realizing that right now.  Do you know -- do you know

11   of any -- do you know if the policy on Response to

12   Resistance had changed while you were a sworn deputy?

13   A.   Not to my knowledge.  But obviously, that

14   date shows after the incident.

15   Q.   Yeah.  Well, let's just -- let's just --

16   let's just talk about it then.  Is -- and Mr. Tsolkas

17   was handcuffed.

18   A.   Yes.

19   Q.   We can agree on that.  And obviously, you've

20   told me that you fell, and Mr. Tsolkas has put in his

21   complaint and otherwise that he was pushed by you,

22   okay? And I understand that the two of you disagree on

23   that, okay?

24   A.   Yes.

25   Q.   Right, complete disagreement on that?

MILESTONE | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**    **www.MILESTONEREPORTING.com**    **Toll Free 855-MYDEPOS**

549396 Summer Deputy Deleon 10 07 2024        Page 29

1      A.   Yes, sir.

2      Q.   Would it be okay to push someone who's

3  handcuffed behind their back?

4      A.   Well, you can obviously see in the video that

5  he picks up his feet.

6      Q.   Picks up his feet?  Now, I'm not asking what

7  -- how you interpret the video.  I'm just asking a very

8  broad question.  Is it ever okay for you to push

9  someone who's handcuffed behind their back?

10     A.   It depends on the circumstances.

11     Q.   Okay.  What circumstances would lead you to

12  the conclusion that it's okay.

13     A.   Just depends on the circumstances at the

14  time.

15     Q.   Okay.  Let's say -- and you -- and I

16  understand that.  Let's say he's, you know, trying to

17  hit you or something, right?  Even though he's cuffed

18  behind his back.  Maybe there is a response where you

19  can take him to the ground or push him, right?

20     A.   Sure.

21     Q.   Okay.  But if the subject is not doing any of

22  those things, he's just standing there, okay?  Let's

23  say this, and I'm not talking Mr. Tsolkas.  We're just

24  talking sort of in the abstract here.  If someone who

25  has been handcuffed behind their backs is just standing



MILESTONE **|** REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

1   there, can you push them to the ground?

2        A.   Depends on what you're pushing. them for.

3   You could be pushing them for a number of things.

4        Q.   Okay.  If they're not doing anything,

5   literally just standing there?

6        A.   You may have to push them to -- to get them

7   out the way of a car coming.  Just depends on the

8   circumstances at the time.

9        Q.   They're standing there, there's nothing.

10  There's no cars coming.  There's no urgency.  There's

11  no exigency.  There's no fire in a building.  You've

12  just arrested someone in a field and they're standing

13  there minding their own business.  Can you push them?

14       A.   Sure, you can.

15       Q.   Okay.  Is it okay?

16       A.   I don't believe my personal opinion matters

17  at this point --

18       Q.   As a law enforcement officer, is it okay?

19       A.   Depends on the circumstances, sir.  I -- I

20  stand by that.

21       Q.   Okay.  I'm just -- I'm trying to make -- I'm

22  trying to just distill this real simple.  I'm standing

23  in a field.  You've cuffed me behind my back, and I

24  don't say a word.  Nothing in the world is going on

25  that would require you to take me to the ground.  Under



**MILESTONE** | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**          **www.MILESTONEREPORTING.com**          **Toll Free 855-MYDEPOS**

1  your law enforcement training and your understanding of

2  the policies as a law enforcement officer, can you push

3  me to the ground?

4       A.   I can, yes.

5       Q.   Okay.  Anyone can do anything, right?

6       A.   Correct.

7       Q.   But would you be violating the policies of

8  your agency if you did that?

9       A.   Well, the policies outline specific things

10  that happen and -- and are circumstantial.

11       Q.   I understand totality of the circumstances,

12  right?  That's the magic words?

13       A.   Yeah.  What -- what kind of point are you

14  trying to make here, sir?

15       Q.   I'm just trying to -- listen, I'm just trying

16  to say, you know, do you think it was -- it -- let's

17  say in that circumstance you didn't fall on Mr. Tsolkas

18  as you contend, and he's right, you pushed him, right?

19  Let's just say -- let's just say you're not in

20  disagreement on that.  You both agree you pushed him to

21  the ground.  Would that have been okay?

22       A.   That -- I'm not going to answer that.

23       Q.   You have to answer that.  Are you refusing to

24  answer that?

25       A.   I -- I've answered your question multiple



**MILESTONE | REPORTING COMPANY**

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

1 times, multiple ways.

2      Q.   No, because we've asked -- I've asked a

3 different question now, Mr. Sumner.  I'm not trying to

4 be difficult with you.  I'm just trying to understand

5 something here.  Let's take all the hypotheticals out.

6 If -- I'm not saying you agree that you put -- I'm not

7 putting words in your mouth here.  I understand your

8 position 100 percent.  You fell on him, is your

9 position.  You did not push him.  You did not shove

10 him. You know, that -- I completely understand that.

11 I'm saying, if you did push him, would that have

12 violated your policies?

13      A.   I don't know.  I haven't read up to date that

14 policy word for word, so I'm not sure of what that

15 policy exactly it says.

16      Q.   Okay.  If the policy said it's not okay --

17 well let -- strike that.

18           Are you saying, sitting here today, you don't

19 know whether it's okay to push someone like in that

20 kind of circumstance, in the circumstances --

21      A.   You were asking about -- you were asking

22 about the policies.  I don't know what exactly that

23 policy says, so.

24      Q.   Would it have been -- as a law enforcement

25 officer, based on your training, not sitting here



MILESTONE **|** REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

**407.423.9900**        **www.MILESTONEREPORTING.com**        **Toll Free 855-MYDEPOS**

543595 Summer Deputy Beliger 10 of 2024    Page 263

1  looking at a policy, would it have been okay to push

2  Mr. Tsolkas?

3      A.   Again, it depends on the certain

4  circumstances around -- around that.

5      Q.   Okay.  I'm asking about the exact

6  circumstances in the afternoon of December 6, 2020.  On

7  those exact circumstances, as they occurred, would it

8  have been okay to push Mr. Tsolkas?

9          MR. CARSON:  Object to form.

10         BY MR. SLATER:

11     Q.   You can answer.

12     A.   Depends on the circumstances of what's going

13 on around me.  If -- if someone comes at me --

14     Q.   I'm not trying to trick you --

15     A.   -- of course I'm going to push him away from

16 me.

17     Q.   I'm not trying to trick you here.  I'm not

18 trying to trick you here.  I'm just trying to say in a

19 nut -- in that exact same -- not it depends on the --

20 in those circumstances.  There's a protest at the

21 prison, okay?  You've cuffed Mr. Tsolkas by that sedan.

22 You've walked him towards the truck.  He goes to his

23 knees. You pick him up, okay?  You then say he fell.

24 He then says you pushed him, right?  Assuming -- and I

25 understand, and I'm not putting words in your mouth,

MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

1  but if you had pushed him, would that have, based on

2  your training experience, been okay?

3          MR. CARSON:  Object to form.

4           BY MR. SLATER:

5      Q.   You can answer, sir.

6      A.   Sure.  If I would have pushed them, it -- it

7  would've been.

8      Q.   Okay.  Okay.  I want to take a minute and I'm

9  going to pull up your interrogatory responses.  We'll

10 mark those as Exhibit 7 [sic].  Okay.  I'm going to

11 show you a document and it's 12 pages long.

12          (EXHIBIT 6 MARKED FOR IDENTIFICATION)

13          MR. SLATER:  And, Matt, I understand sort of

14     what we discussed about on the phone with respect

15     to some of the content here, so we can just -- we

16     can stipulate.  I -- I'm okay with stipulating on

17     the record that we wouldn't file this version of

18     it, or we would, if we did, under seal, but I

19     understand you're going to supplement this, right?

20          MR. CARSON:  Yeah.  Thanks.  Thanks, James.

21     I'm going to work with my client this week and get

22     you an amended and verified objections and answers

23     to the first set of interrogatories consistent with

24     our telephone call this morning.

25          MR. SLATER:  Okay, great.  And just to the

MILESTONE | REPORTING  COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS

349396 Summer Deputy Dulion  10 of 2021          Page 89

```
 1                    CERTIFICATE OF OATH

 2

 3

 4  STATE OF FLORIDA

 5  COUNTY OF ORANGE

 6

 7

 8       I, the undersigned, certify that the witness in

 9  the foregoing transcript personally appeared before me

10  and was duly sworn.

11

12  Identification:  Produced Identification

13

14

15

16

17  _____

18          LANNAH E. TEAGUE

19          Court Reporter, Notary Public

20          Commission Expires: 08/12/2028

21          Commission No. HH 581172

22

23

24

25
```



**MILESTONE** | REPORTING COMPANY

TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.**MILESTONEREPORTING**.com          Toll Free 855-MYDEPOS

```
 1                    C E R T I F I C A T E

 2

 3

 4

 5

 6        I,  LANNAH E. TEAGUE, Court Reporter and Notary

 7   Public, do hereby certify that I was authorized to and

 8   did report the foregoing proceeding, and that said

 9   transcript is a true record of the said proceeding.

10

11        I FURTHER CERTIFY that I am not of counsel for,

12   related to, or employed by any of the parties or

13   attorneys involved herein, nor am I financially

14   interested in said action.

15

16   Submitted on: October 16, 2024.

17

18

19

20

21   _____

22        LANNAH E. TEAGUE

23        Court Reporter, Notary Public

24

25
```

MILESTONE | REPORTING COMPANY
TOMORROW'S TECHNOLOGY TODAY

CORPORATE **ORLANDO, FL 32801**
**JACKSONVILLE, FL 32256**
**TAMPA, FL 33602**

407.423.9900          www.MILESTONEREPORTING.com          Toll Free 855-MYDEPOS