UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

_____
                                    )
PETER TSOLKAS,                      )
                                    )
                   Plaintiff,       )
                                    )
          v.                        )    CIVIL ACTION
                                    )    NO. 3:23-cv-01428-WGY-PDB
DALTON SUMNER, in his individual    )
capacity,                           )
                                    )
                   Defendant.       )
_____         )

YOUNG, D.J.[1]                                February 26, 2026

## MEMORANDUM & ORDER

### I.    INTRODUCTION AND PROCEDURAL HISTORY

Peter Tsolkas ("Tsolkas") filed suit against Deputy Dalton
Sumner ("Sumner") in his individual capacity on December 6,
2023, based on his allegedly excessive use of force during an
arrest.  Compl., ECF No. 1.  Tsolkas brought three counts: (1)
excessive use of force in violation of the Fourth Amendment,
brought pursuant to 42 U.S.C. § 1983 ("Section 1983"), id. ¶¶
24-30; (2) First Amendment retaliation, also pursuant to Section
1983, id. ¶¶ 31-38; and (3) assault and battery under Florida
law, id. ¶¶ 39-48.

Sumner filed an Answer with affirmative defenses stating
that he is entitled to qualified immunity on Tsolkas's Section
1983 claims and is immune to suit for the claims brought under

_____

[1] Of the District of Massachusetts, sitting by designation.

Florida law, in addition to raising other defenses, Answer &
Affirm. Defenses ("Def.'s Answer") 6, ECF No. 16, then moved
for summary judgment on all counts, Def.'s Mot. Summ. J. & Mem.
Law ("Def.'s Mem."), ECF No. 23. The parties have fully briefed
this motion. Pl.'s Resp. Opp'n Def.'s Mot. Summ. J. ("Pl.'s
Opp'n"), ECF No. 27; Def.'s Reply Pl.'s Resp. Opp'n Def.'s Mot.
Summ. J. ("Def.'s Reply"), ECF No. 28.

The Court held a hearing on this motion on March 31, 2025,
and took the matter under advisement. Minute Entry, ECF No. 36.

This Court has subject matter jurisdiction over the claims
arising under 42 U.S.C. § 1983 pursuant to 28 U.S.C. § 1331 and
28 U.S.C. § 1367(a)(3), and may exercise supplemental
jurisdiction over Tsolkas's state law claim because it arises
from the same common nucleus of operative fact as the claims
arising under federal law, pursuant to 28 U.S.C. § 1367.

## II.   FACTUAL BACKGROUND[2]

Tsolkas is a Florida resident, and Sumner was at all
relevant times a deputy sheriff with the Bradford County
Sheriff's Office in Bradford County, Florida. Compl. ¶¶ 6-7.

---

[2] The facts are largely undisputed, with the significant
exception of how to interpret the moment where Tsolkas falls to
the ground, Sumner's actions in connection therewith, and some
lesser exceptions. See infra notes 2-3; Def.'s Mem. 2-8. The
facts are therefore recited as alleged, but it is noted where
the parties differ significantly.

On December 6, 2020, Tsolkas was participating in a protest outside the Florida State Prison in Raiford, Florida. Id. ¶ 10. Sumner and other deputies were dispatched to the protest and, around 4:23 PM, over his patrol car's P.A. system, Sumner ordered the protestors to leave the premises within thirty seconds or they would be arrested for trespassing and have their vehicles towed. Id. ¶¶ 11-12. Tsolkas and the protestors began to disperse toward their vehicles, which were parked along a state road. Id. ¶ 13. Standing in front of his vehicle, Tsolkas spoke loudly against the alleged human rights abuses and unconstitutional practices at the prison, then, while holding a cymbal, asked Sumner, "you guys gonna do dirty work for these fucking assholes?" Id. ¶¶ 14-16.

Sumner turned to face Tsolkas, approached him and said, "Come here. You want to talk shit. Come here." He then placed Tsolkas under arrest and handcuffed him while Tsolkas said, "I'm walking away, man." Id. ¶ 17.[3] As Sumner was taking him away, Tsolkas also asked Sumner if he "supports these assholes"; Sumner told him to walk, and Tsolkas said, "fuck you, I'm not walking, you fucking pig," and knelt. Id. ¶ 18. Sumner then

---

[3] Sumner tells a slightly different story, stating that Tsolkas "started walking toward" him at one point as the protestors otherwise walked toward the cars, and "took a small step toward" him again just before Sumner arrested him. Def.'s Mem 4-6. This difference does not impact the analysis here.

lifted Tsolkas by his arms, dragged him several steps, then
pushed or guided him toward the ground as Tsolkas let himself go
limp and fell.  Id. ¶ 19.[4]  Sumner and another officer lifted
Tsolkas from the ground and took him to a patrol car.  Id. ¶ 20.

Tsolkas sustained a deep puncture wound in relation to his
being pushed or falling to the ground, and was taken to the
hospital before he was eventually booked and charged with
resisting arrest without violence, trespassing after warning,
and criminal mischief.  Id. ¶¶ 21-22.[5]  Tsolkas has scarring from

---

[4] Video of the incident -- which this Court may consider
because, when the video's authenticity is undisputed, and at
least where the video belies one party's account of events such
that no reasonable jury could believe it, the Court must "view[]
the facts in the light depicted by the videotape," Scott v.
Harris, 550 U.S. 372, 381 (2007); see also Singletary v. Vargas,
804 F.3d 1174, 1183 (11th Cir. 2015) -- undercuts Tsolkas's
allegation that he was "slammed down onto the ground," Compl. ¶
19.  It appears from the video that Sumner may have given
Tsolkas a slight extra shove toward the ground, but only after
Tsolkas was already falling due to going limp and, as Sumner
himself was likewise being pulled toward the ground, it is
plausible he was steadying himself.  See Deputy Sumner's Body-
worn Camera Footage, ECF No. 22-4; Cell Phone Video Footage, ECF
No. 22-6.  Sumner disputes Tsolkas's characterization of this
incident, stating that he merely followed Tsolkas to the ground
when he lost his footing after Tsolkas went limp, Def.'s Mem. 7-
8, and points toward Tsolkas's own representation, in a
deposition (albeit heavily excerpted), that this "was the
process of one person trying to carry someone they couldn't
carry by themselves," Def.'s Mem. 8; Tsolkas Dep. 60:2-4, ECF
No. 22-5 (emphasis added).

[5] Sumner admits that "Plaintiff had a laceration on his left
shoulder for which Sumner transported Plaintiff to a medical
facility," Def.'s Answer 3, but denies Tsolkas's allegation that
it was "a result of" Sumner's pushing Tsolkas to the ground,
Compl. ¶ 21.

[4]

the wound, and incurred medical expenses and other damages in
connection with this injury.  Id. ¶ 23.

III. **ANALYSIS**

Tsolkas brings three counts against Sumner: (1) excessive
use of force in violation of the Fourth Amendment, based on
Sumner's allegedly violently and maliciously throwing Tsolkas to
the ground while he was handcuffed, id. ¶¶ 24-30; (2) First
Amendment retaliation, based on the same acts as allegedly
caused by Tsolkas's criticizing and cursing the police; id. ¶¶
31-38; and (3) assault and battery under Florida law, based on
the same allegedly excessive and malicious use of force, id. ¶¶
39-48.

Sumner moves for summary judgment on all counts, on the
grounds that: (1) Sumner's use of force was not unreasonable,
given that Sumner was making a lawful arrest and Tsolkas was
resisting by going limp and dragging Sumner toward the ground,
Def.'s Mem. 11-18; (2) Tsolkas cannot show that his exercise of
free speech rights caused his injury, as Sumner merely fell on
him as Tsolkas went limp and there is no further evidence to
support a causal connection between Tsolkas's protected speech
and any adverse action, id. at 18-19; and (3) there was no
threat of injury on which to base an assault claim, no excessive
force on which to base a battery claim, and, in any case, Sumner
is entitled to statutory immunity for these claims because

[5]

Florida public employees are immune from tort actions unless they act with bad faith, malice, or wanton disregard of human rights or safety, which Tsolkas cannot show, id. at 20-21.

Sumner also argues that he is entitled to qualified immunity on Tsolkas's Fourth and First Amendment claims because it was not clearly established law at the time either that the use of moderate force against one who is resisting arrest is unconstitutional, or that the actions taken here could be construed as unconstitutional retaliation for exercising First Amendment rights.  Id. at 18, 20.

Even drawing all inferences in favor of the nonmoving party, based on the evidence presented, a reasonable factfinder could find at most that Sumner gave Tsolkas a slight unnecessary shove as he was already being pulled down by an arrestee who was at the time, even if passively, resisting arrest.[6]  Under Eleventh Circuit law, this does not amount to excessive force, and without excessive force Tsolkas's First Amendment retaliation and state law battery claims are also unfounded.

This Court therefore grants Sumner's motion for summary judgment on all counts.

---

[6] Sumner points out that, despite describing his going limp as an act of "passive resistance," Tsolkas later pleaded nolo contendere to trespass after warning and opposing an officer without violence.  Def.'s Opp'n 6 & 6 n.2; Judgement & Sentence, ECF No. 22-7.

## A. Pleading Standard

Summary judgment is required when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue of material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Materiality depends on the substantive law, and only factual disputes that might affect the outcome of the suit can preclude summary judgment. Id. In reviewing the evidence, this Court must "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000). This Court must also "disregard all evidence favorable to the moving party that the jury is not required to believe." Id. at 151. The moving party bears the initial burden of demonstrating that "the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the movant does so, then the nonmovant must set forth specific facts sufficient to establish a genuine issue for trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986).

[7]

### B. Tsolkas's Excessive Force Claim (Count One)

Tsolkas argues that when Sumner "violently threw" Tsolkas to the ground while he was handcuffed, he used excessive force in violation of the Fourth Amendment.  Compl. ¶¶ 24-30.  Sumner argues that his use of force was not excessive because Sumner was attempting to prevent Tsolkas from falling to the ground, and only reached out to catch himself as he risked falling over the resisting Tsolkas, Def.'s Mem. 11-13, and that in any case he is entitled to qualified immunity because no clearly established case law put him on notice that using moderate force against a resisting arrestee was unlawful, id. at 18.  Tsolkas argues in response that Tsolkas's crimes were not serious and his resistance was passive, and that it was clearly established law at the time that even de minimis force cannot be used against an individual who poses no threat; and that, even if Tsolkas were resisting, Sumner ought have asked for assistance carrying Tsolkas, as his own department's policies dictate.  Id. at 14-16.

Even drawing all factual inferences in Sumner's favor, and particularly in view of the video evidence insofar as it clearly contradicts the Tsolkas's allegation that Sumner violently threw him to the ground, Tsolkas's actions at most amounted to an extra shove toward the ground of an arrestee who had gone limp to pull himself down as he passively resisted arrest.  Under

[8]

Eleventh Circuit law, the use of de minimis force while executing a lawful arrest is itself lawful, including force used to subdue a handcuffed but still noncompliant arrestee.  The level of force used here is consistent with these <u>de minimis</u> cases, and therefore was not unreasonable.

To assess reasonableness for purposes of Fourth Amendment excessive force claims, courts must give "careful attention to the facts and circumstances of each particular case," including (1) the severity of the crime at issue, (2) the immediateness of the threat posed to the safety of officers or others, and (3) whether the suspect is actively resisting arrest or fleeing. <u>Crenshaw</u> v. <u>Lister</u>, 556 F.3d 1283, 1290 (11th Cir. 2009).  "In order to determine whether the amount of force used by a police officer was proper, a court must ask 'whether a reasonable officer would believe that this level of force is necessary in the situation at hand.'"  <u>Lee</u> v. <u>Ferraro</u>, 284 F.3d 1188, 1197 (11th Cir. 2002) (quoting <u>Willingham</u> v. <u>Loughnan</u>, 261 F.3d 1178, 1187 (11th Cir. 2001)).  "Moreover, 'Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it.'"  <u>Id.</u> (quoting <u>Graham</u> v. <u>Connor</u>, 490 U.S. 386, 396 (1989)).

[9]

As Sumner points out, the Eleventh Circuit "has established the principle that the application of de minimis force, without more, will not support a claim for excessive force in violation of the Fourth Amendment." Nolin v. Isbell, 207 F.3d 1253, 1257 (11th Cir. 2000). Falling under this de minimis principle are cases where the police shoved an arrestee against a car and pushed his knee into his back, leading to "minor bruising," id. at 1258 n.4, applied handcuffs too tightly leading to skin abrasions, id. at 1256 (citing Gold v. City of Miami, 121 F.3d 1442, 1446-47 (11th Cir. 1997)), slammed an arrestee against a wall and kicked his legs apart, leading to minor medical treatment for arthritic knee pain, id. (citing Jones v. City of Dothan, 121 F.3d 1456, 1460-61 (11th Cir. 1997)), and even where the officer in question shoved the arrestee against a car so that she hit it headfirst, leading to a fractured hand and bruising across her upper body, Taylor v. Taylor, 649 F. App'x 737, 746 (11th Cir. 2016).[7]  More to the point, "de minimis force, even when it is 'unnecessary,' is 'not unlawful.'"  Id. (quoting Durruthy v. Pastor, 351 F.3d 1080, 1094 (11th Cir. 2003)).

---

[7] "Unpublished decisions in the Eleventh Circuit are not binding precedent, but may be cited as persuasive authority." Carver Middle Sch. Gay-Straight All. v. School Bd. of Lake Cnty., Fla., 249 F. Supp. 3d 1286, 1291 n.8 (M.D. Fla. 2017) (Hodges, J.).

Tsolkas points to the severity of his injury to distinguish this well-established case law, Pl.'s Opp'n 12, but in general it is "the amount and type of force used" that is most relevant to the Fourth Amendment analysis, Taylor, 649 F. App'x 737, 746 (11th Cir. 2016).  The severity of a resulting injury may be factored in, see Gold, 121 F.3d at 1446-47, but, given that the Eleventh Circuit has upheld the use of force during an arrest where the plaintiff's hand was fractured and much of her upper body was bruised, see Taylor, 649 F. App'x -- and that there is no eggshell skull rule for the Fourth Amendment -- Tsolkas's injury, though apparently serious, is not enough to find Sumner's use of force unreasonable.  "'Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers,' violates the Fourth Amendment." Graham, 490 U.S. at 396 (citation omitted) (quoting Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir. 1973)).

The cases to which Tsolkas points to argue that the Isbell line of de minimis force cases ought not apply here are factually distinguishable.  Pl.'s Opp'n 9-10; Croom v. Balkwill, 645 F.3d 1240, 1252 n.17 (11th Cir. 2011) (referring to "[a]n officer's decision to **point a gun at an unarmed civilian who objectively poses no threat**" (emphasis added)); Dominguez v. City of Sweetwater, 610 F. App'x 948, 948-49 (11th Cir. 2015) (referring to "the context of **a compliant suspect who is**

[11]

**securely in custody,**" and clarifying that "at best, the line of authority to which [the defendant officer] cites **approves of** only **a minor push or shove in such circumstances**" (emphasis added)). To the extent that Tsolkas relies on the fact that he was already handcuffed at the time when the force in question was used, moreover, Sumner points to a case where a traffic citation arrestee who refused to sign the citation allowed himself to be handcuffed, then dropped to the ground and refused repeated orders until, after warning, the officer tased him, leading to scarring. Def.'s Mem. 15-16; Buckley v. Haddock, 292 F. App'x 791, 792-94, 798 (11th Cir. 2008). The Eleventh Circuit held that this use of force was not unreasonable, or, alternatively, that it was not clearly established that it was so, and specifically rejected the argument that the passivity of the arrestee's resistance and the arrestee's being already handcuffed tilted the Fourth Amendment balance. Id. Although there is little "guidance in the case law regarding how the court . . . should consider such passive resistance in an excessive-force analysis," then, the apparently greater force used in Buckley inclines toward ruling there was no excessive force here. Andrews v. Williams, No. 2:13cv136 2015 WL 5735652, at *5 (M.D. Ala. Sept. 30, 2015).

Finally, Tsolkas's repeated gestures toward the Bradford County Sheriff's Office Policies and Procedures are irrelevant

[12]

to the Fourth Amendment analysis, which is grounded in objective reasonableness.  See Myrick v. Fulton Cnty., Ga., 69 F. 4th 1277, 1303 n.28 (11th Cir. 2023) ("Simply because something is in violation of a policy, or even illegal, does not make it unconstitutional.").  Tsolkas argues that Sumner ought have requested help in lifting Tsolkas and points to Sheriff's Office policies arguably supporting this idea, but points to no case law in support of the proposition that lifting a suspect alone amounts to a constitutional violation, Pl.'s Opp'n 15–16, and a similar argument was rejected by the Eleventh Circuit in Buckley, 292 F. App'x at 796 ("In most circumstances where an arrestee is resisting, a single officer can constitutionally effectuate an otherwise lawful arrest by resorting to the use of moderate, nonlethal force.  No constitutional basis exists for requiring two or more officers to make routine arrests . . . .").

In sum, even drawing all factual inferences in Tsolkas's favor, one arguably unnecessary shove of a passively resisting suspect does not amount to an excessive force violation.  Rather, the weight of Eleventh Circuit case law points the other way.  Thus, Sumners's use of force was not excessive under the circumstances, and this Court grants Sumner's motion for summary judgment on this count.

[13]

### C. Tsolkas's First Amendment Retaliation Claim (Count Two)

Tsolkas also challenges Sumner's shove as an allegedly retaliatory action for exercise of his First Amendment rights, while clarifying that he cannot challenge the arrest itself on these grounds.  Pl.'s Opp'n 18.  Although Tsolkas's allegations and the video evidence give some support for the proposition that Sumner may have been angered by Tsolkas's speech during the incident -- as he approaches Tsolkas to make the arrest, Sumner states, "Come here. You want to talk shit. Come here," Compl. ¶ 17 -- as set out in the previous section, Sumner's use of force was not excessive here, so there is no adverse action separate from the arrest itself which Tsolkas may challenge.

This Court acknowledges Tsolkas's attempt to challenge "only . . . the retaliatory motivation in the shove to the ground, not the arrest."  Pl.'s Opp'n 18.  Although this poses an interesting question, Tsolkas cites no authority for the proposition that non-excessive force used during a lawful arrest ought not be governed by the Nieves rule that, to make out a First Amendment retaliatory arrest claim, a plaintiff must plead and prove that no probable cause for the arrest itself existed, and the justification for the rule suggests it ought apply.  See Nieves v. Bartlett, 587 U.S. 391, 401-04 (2019).  As Sumner points out, Tsolkas pleaded nolo contendere to trespass after warning and opposing an officer without violence, so the

[14]

argument that there was no probable cause for the arrest is
unavailable to him.  Def.'s Opp'n 6 & 6 n.2; Judgement &
Sentence, ECF No. 22-7.  At a minimum, then, Tsolkas has not
carried his burden of showing that it was clearly established
law at the time of the incident that non-excessive force used
during a lawful arrest can ground a First Amendment retaliation
claim, and thus Tsolkas is shielded by qualified immunity on
this count.

   To state a claim for First Amendment retaliation, Tsolkas
must show (1) constitutionally protected speech or action, (2)
retaliatory conduct that adversely affected the speech, and (3)
a causal connection between the speech and the retaliatory
action.  Bennett v. Hendrix, 423 F.3d 1247, 1250 (11th Cir.
2005).  On the second prong, the Eleventh Circuit has adopted
the standard that "a plaintiff has suffered adverse action if
the defendant's allegedly retaliatory conduct would likely deter
'a person of ordinary firmness' from the exercise of First
Amendment rights."  Id. at 1250-51 (quoting Constantine v.
Rectors & Visitors of George Mason Univ., 411 F.3d 474, 500 (4th
Cir. 2005)).

   The Supreme Court has clarified that, for First Amendment
retaliatory arrest claims, "[a]bsent . . . a showing [that there
was no probable cause for the underlying arrest], a retaliatory
arrest claim fails," but, "if the plaintiff establishes the

[15]

absence of probable cause," he must show only that the exercise of his First Amendment rights was a substantial or motivating factor in the retaliatory action. Nieves, 587 U.S. at 404. This rule is based on the difficulty of proving motive in such cases, since "it is particularly difficult to determine whether the adverse action was caused by the officer's malice or the plaintiff's potentially criminal conduct" when an officer has probable cause for an arrest, and "protected speech is often a legitimate consideration when deciding whether to make an arrest," such as when it suggests whether a suspect will cooperate or poses a threat. Id. at 401-02.

Sumner's alleged push raises the interesting issue of whether force used during an arrest for which there was probable cause may nonetheless stand as an adverse action for a retaliation claim separate from the barred retaliatory arrest action. Although Nieves does not squarely govern this issue, its reasoning suggests why the answer is, at least where the force used is non-excessive, likely no: as the Supreme Court restated in Nieves, "[t]o ensure that officers may go about their work without undue apprehension of being sued, we generally review their conduct under objective standards of reasonableness," that is, without inquiring too closely into difficult state of mind issues. Id. at 403-04. Importing this Fourth Amendment logic into the First Amendment context, the

[16]

Nieves Court specifically observed that a "purely subjective approach" to First Amendment retaliatory arrest claims would risk turning "policing certain events **like an unruly protest**" into an "overwhelming litigation risk[]," given that "[a]ny inartful turn of phrase or perceived slight during a legitimate arrest could land the officer in years of litigation." Id. at 404 (emphasis added). As a matter of logic, permitting unsuccessful excessive force claims to give rise to claims of retaliation would be to risk creating an exception that swallows the rule: officers would be protected from retaliatory arrest suits based on otherwise lawful arrests, but vulnerable to lawsuits which, like this one, propose to pick apart each individual action taken during a lawful arrest frame-by-frame.

In any case, Tsolkas has not carried his burden of showing that, on the view of the evidence most congenial to him, clearly established law was violated here. Sumner has invoked qualified immunity, so Tsolkas has the burden to show not just that the First Amendment may have been violated, but that it was clearly established that it was so, see Stewart v. Baldwin Cnty. Bd. of Educ., 908 F.2d 1499, 1503 n.1 (11th Cir. 1990) (noting that, once defendants show they were acting within their discretionary authority, "[t]he second step then shifts the burden to the plaintiff to show that the defendants' actions violated clearly established constitutional law"). Tsolkas cites authority for

[17]

the general propositions that citizens may criticize police officers without risking arrest, see Pl.'s Opp'n 17-18, and one Eleventh Circuit case which establishes that First Amendment retaliation claims may withstand a motion for summary judgment where the question whether the officer in question had probable cause to arrest the plaintiff is unclear, see Khoury v. Miami-Dade Cnty. Sch. Bd., 4 F. 4th 1118, 1129-30 (11th Cir. 2021) ("A person of ordinary firmness would surely be deterred from exercising her First Amendment rights after being **detained without probable cause**; suffering a dislocated elbow . . . and being involuntarily committed . . . ." (emphasis added)), but here there was probable cause for the arrest at issue.  At most, then, it was not clearly established law at the time that non-excessive force used in the course of effecting an otherwise lawful arrest could work a separate First Amendment retaliation violation.

Since Tsolkas has not shown that Sumner's conduct in possibly shoving him once unnecessarily during an otherwise lawful arrest worked a First Amendment violation under clearly established law, Sumner is entitled to qualified immunity on this count, and this Court grants Sumner's motion for summary judgment on count two.

### D. Tsolkas's Assault and Battery Claim (Count Three)

Tsolkas also claims that Sumner's shove amounts to an assault and battery under Florida law, Compl. ¶¶ 39-48, but appears to drop the assault claim as there is no alleged threat of injury, see Def.'s Mem. 20; Pl.'s Opp'n 20.  The parties agree that Florida courts assess state-law battery claims of excessive force under a "similar standard" to that governing Fourth Amendment claims.  Def.'s Mem. 21; Pl.'s Opp'n 20; Sullivan v. City of Pembroke Pines, 161 F. App'x 906, 911 (11th Cir. 2006).  As such, Tsolkas's state law claim fails for the same reasons his Fourth Amendment excessive force claim fails. See supra section II.B.

Therefore, this Court grants Sumner's motion for summary judgment on count three.

## IV.  CONCLUSION

Tsolkas sued Sumner in his individual capacity for excessive force under the Fourth Amendment, First Amendment retaliation, and state-law assault and battery.  Sumner moved for summary judgment on all counts.

[19]

This Court ALLOWS Sumner's motion for summary judgment, ECF No. 23, on all counts and judgment shall enter for the defendant Sumner.

**SO ORDERED.**

WILLIAM G. YOUNG
JUDGE
of the
UNITED STATES[8]

---

[8] This is how my predecessor, Peleg Sprague (D. Mass. 1841-1865), would sign official documents.  Now that I'm a Senior District Judge I adopt this format in honor of all the judicial colleagues, state and federal, with whom I have had the privilege to serve over the past 48 years.